ADDIE LONG ROBINSON, PLAINTIFF-APPELLANT, v. WAL-
TER F. HODGE, ADMINISTRATOR WITH WILL AN-
NEXED OF THE ESTATE OF AGNES GRACE WILLIAMS,
DECEASED, DEFENDANT-RESPONDENT.

Argued February 6, 1950—Decided May 8, 1950.

See also 1 *N. J.* 357, 63 *A.* 2d 804.

Mr. *Robert S. Hartgrove* argued the cause for the appellant.

Mr. *Edward J. Madden* argued the cause for the respondent (*Mr. Louis E. Saunders,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. This was an appeal to the Superior Court, Appellate Division, but was certified here on our own motion.

It is an appeal from an order of the Hudson County Court entered December 6, 1949, vacating a writ of execution and setting aside a levy made upon funds of the estate of Agnes Grace Williams, deceased, on deposit in the Franklin National Bank of Jersey City, and quashing a rule to show cause directed to the said bank "why the moneys levied under the said writ of execution should not be turned over to the plaintiff."

The record before us is meager and we have examined previous litigation in this same estate but that record throws no light on one or two important questions here involved. *Robinson v. Hodge,* 139 *N. J. Eq.* 189 (*Ch.* 1947) ; affirmed, 140 *N. J. Eq.* 473 (*E. & A.* 1947).

The respondent was appointed administrator c. t. a. of this estate on March 3, 1943. A rule limiting creditors was taken August 16, 1943. As far as appears no decree barring creditors was ever taken and no final settlement of the estate or distribution has been made although seven years have now elapsed.

An intermediate account, likewise meager in form, was filed September 21, 1944, which was not finally approved until January 18, 1946. Ten days later a judgment in favor of the appellant was entered in the Hudson County Pleas in the sum of $1,953, together with costs of $87.28, which recovery was for services rendered the testatrix during her last illness. We have to assume that this claim was presented to the administrator and disputed and that suit was brought pursuant to *R. S.* 3 :25–8, on which judgment was entered January 28, 1946. The intermediate account filed clearly indicates the estate was solvent. It sets forth realty valued at $15,600, personal assets of $3,027.18, estate debts amounting to $277.57 were allowed, at which time the administrator was awarded commissions of $312.14 on *corpus* and income and also attorney's fee of $500. From the date of the appel-

lant's judgment down to date the respondent has resisted every effort to collect this judgment and in the meanwhile has taken few steps to administer and close out this estate.

On August 6, 1946, appellant caused a writ of execution to be issued on her judgment and a rule issued on the defendant to show cause why the judgment should not be paid. This was never decided. On September 19, 1946, the administrator presented a petition to the Orphans' Court and obtained a rule to show cause, returnable on November 22, 1946, seeking to sell the five parcels of real estate, devised by the decedent, for the payment of debts. This petition showed a deficiency of $4,627.63, $4,400 of which was to cover administration expenses, commissions and counsel fee, and included the plaintiff's judgment. On September 20, 1946, the administrator obtained a rule to show cause directed to the plaintiff, with *ad interim* restraint, why she should not be enjoined from further proceedings on the judgment. This application was never decided.

On November 18, 1946, the appellant filed a bill in Chancery asking that the court impress a lien upon the real property belonging to the estate but this bill was dismissed on the ground that equity's jurisdiction of executor's accounts is withheld unless it appears that the jurisdiction of the Orphans' Court is inadequate or there is some special reason calling for equity's intervention, and that a judgment creditor must establish that he has used all available remedies at law against the debtor and that efforts to collect the judgment are fruitless before a court of equity will intervene. This dismissal was affirmed on appeal September 25, 1947.

In this case the respondent took a position with respect to the levy on moneys in the bank accounts directly opposite to the one now asserted and insisted that appellant should pursue her rights under the pending execution and levy. *Robinson v. Hodge, supra.*

On December 5, 1947, the said administrator obtained an order in the Orphans' Court permitting him to sell four par-

cels of land devised by the decedent to pay her debts. Since that time apparently no sale of these lands has occurred.

The levy which the order under appeal set aside on December 6, 1949, was the same levy made on August 6, 1946. The Orphans' Court Judge in setting the levy aside held that if the appellant was permitted to levy under her execution she would gain substantial and unfair preference over other creditors whose claims are valid. He held that a judgment at law after a claim has been disputed by an executor does no more than establish the claim as a valid one and that execution and levy upon such judgment is invalid. He cited *South Camden Trust Co. v. Black,* 110 *N. J. Eq.* 97 (*Ch.* 1932), and *Donohue v. Casabianca,* 112 *N. J. L.* 158 (*E. & A.* 1934). See also *Kenny v. Trowbridge,* 124 *N. J. Eq.* 504 (*Ch.* 1938). In all of these cases an attempt was being made to secure a lien against real estate. It was held therein that our statute confers upon creditors a lien on real estate of the deceased debtor, *R. S.* 3:25–21, and that such lien is established if a claim has been presented to the executor or administrator and admitted to be a valid claim, or the claim has been established by a judgment at law.

Insofar as the lien on real estate is concerned claims established in these two different ways are on the same footing, but there can be no execution against real estate. This is expressly prohibited by *R. S.* 2:26–97.1 which provides "but no real estate of any testator or intestate shall be sold or in anywise affected by any judgment or execution against executors or administrators."

These cases and statutes are not controlling with respect to the goods and chattels in the hands of the administrator which is personal property. These goods and chattels and personal property are the primary fund out of which the administrator is to pay the debts of the decedent. Funeral expenses, physicians' and nurses' bills, administration expenses, debts due the United States and judgments entered of record in the decedent's life, are preferred claims against the per-

sonal property and are to be paid first. The balance or surplus is available for payment of general creditors.

▉ The judgment in this case, if it is in proper form, is not a general judgment against the administrator c. t. a. but is a special judgment against the goods and chattels in his hands for the purpose of administration. *Murphy's Adm'r. v. Davis*, 3 *N. J. L.* 843 (*Sup. Ct.* 1811) ; *Sindle v. Kiersted*, 3 *N. J. L.* 926 (*Sup. Ct.* 1812) ; *Woodruff's Ex'rs. v. Woodruff*, 4 *N. J. L.* 375 (*Sup. Ct.* 1817) ; *Montgomery's Ex'rs. v. Reynolds*, 14 *N. J. L.* 283 (*Sup. Ct.* 1834) ; 2 *Tidd's Practice* 1030, 1164. And an execution if issued must issue only against the goods and chattels in his hands for the purpose of administration. *R. S.* 3:13–3 provides for the manner by which executors or administrators are made parties defendant to an action and then provides: "If, in such an action, judgment go for plaintiff, *he shall have judgment and execution* against all the executors or administrators named in the process, *to be made of the personal property of the decedent.*"

▉ No case or statute has been cited prohibiting a levy under the circumstances here presented where there has been no decree barring creditors and no final settlement or distribution.

▉ We have carefully examined the statutes and note that *R. S.* 3:13–5 states that no execution shall issue within six months after the probate or letters of administration have been granted. Nothing is said as to whether execution can issue after that period. *R. S.* 3:25–61 provides that where an estate is insolvent the plaintiff may proceed to final judgment therein "but no execution shall in any case issue after the making of said application" to have the estate declared insolvent. Where a rule limiting creditors has been taken by a personal representative and upon subsequent application such an estate has been declared insolvent a judgment against the representative between the time of taking such rule and making such application will not be entitled to be paid in preference to other creditors. If moneys have been received

by virtue of execution they will be ordered to be paid to the personal representative, to be applied ratably among the creditors. *Ryan v. Van Arx*, 46 *N. J. L.* 531 (*E. & A.* 1884); *Taylor v. Volk*, 38 *N. J. L.* 204 (*Sup. Ct.* 1875).

If a judgment has been entered during the lifetime of a decedent and he dies with the judgment unsatisfied in whole or in part, then no execution can issue for six months after his death without court order. But if letters of administration are granted upon his estate then execution can only issue on ten days' notice of such application to the administrator and devisees and heirs, and if objected to no execution shall be issued until three months after the date of notice.

 In all other situations it would appear that execution and levy can be made on personal property in the hands of the administrator even if a rule limiting creditors has been taken. The purpose of the rule limiting creditors is to secure the speedy settlement of decedent's estate and to enable the personal representative to determine whether the estate is to be settled as a solvent or insolvent estate, and whether the real estate must be resorted to for the payment of debts. *Emson v. Allen*, 62 *N. J. L.* 491 (*Sup. Ct.* 1898); *Newbold v. Fennimore*, 53 *N. J. L.* 307 (*Sup. Ct.* 1890). The purpose of the rule is to bar belated creditors from participating in the orderly settlement of the estate and is intended to promote the rights of creditors and not to furnish a vehicle by which executors, administrators, legatees or devisees may refuse to apply the assets of the estate to the payment of debts. *Home Brewing Co. v. Mahler*, 92 *N. J. Eq.* 323 (*Ch.* 1920). See also *Ryder v. Wilson*, 41 *N. J. L.* 9 (*Sup. Ct.* 1878); *Equitable Life Ass'n. Society v. Chesley*, 64 *N. J. Eq.* 348 (*E. & A.* 1902). *Cf. Dodson v. Sevars*, 52 *N. J. Eq.* 611 (*Ch.* 1894).

██ Where a claim is verified or established by judgment the executor or administrator may pay the claim and if he pays it in good faith on or before the final judgment the court or the surrogate must allow to the accountant the amount of such claim and demand if there be sufficient of said estate to

pay the debts of equal degree and demand in full. *Equitable Life Ass'n. Society v. Chesley, supra.*

During the six-months period no execution can issue but thereafter it may unless an application is made to declare the estate insolvent under *R. S.* 3:25–51 to 66, but the insolvency proceeding must be started, otherwise the right of execution under *R. S.* 3:13–5 is revived. *United National Bank v. Poulson,* 40 *N. J. L.* 284 (*Sup. Ct.* 1878); *cf. Interstate B. & L. Ass'n. v. Zeisler,* 126 *N. J. Eq.* 505 (*Ch.* 1940); *Leviglon v. Tuly, Ibid.* 552, 555 (*Ch.* 1940). *Cf. Von Arx v. Wemple's Ex'rs.,* 43 *N. J. L.* 154 (*Sup. Ct.* 1881).

A creditor who has taken a judgment, as the appellant here, is entitled to execution and levy and if the execution remains partially or wholly unsatisfied for want of personal assets he may apply for an order to sell the real estate, *R. S.* 3:25–24. This is his remedy and this section clearly contemplates an execution and a levy by a creditor so situated and he does not lose his levy simply because the petition to sell the land is filed by the administrator, *R. S.* 3:25–23. A creditor cannot make an application under *R. S.* 3:25–16 when an administrator neglects to make a final settlement within one year, unless he is a creditor barred by the decree barring creditors; nor can he make application under *R. S.* 3:25–11 until the administrator has obtained a decree settling the estate and a surplus remains; nor can he proceed under *R. S.* 3:25–15 against a legacy or distributive share until after final settlement. *O'Neil v. Freeman,* 45 *N. J. L.* 208 (*Sup. Ct.* 1883).

We assume that the order to sell the real estate was properly entered and that there was not sufficient personal property to pay all the debts since this order cannot be attacked collaterally in this proceeding. But when the property is sold, and it should be sold at once, only so much of the property should be sold as is necessary to pay the debts and then the money will be paid into court under *R. S.* 3:25–40 and distribution made in the order of preference or priority,

so that it is no argument to say that by allowing the levy to stand the appellant may get an undue preference.

The appellant relies on *R. S.* 2:26–170 to support his levy. This section is a part of *P. L.* 1915, *Chapter* 115, *page* 182, *R. S.* 2:26–168 to 2:26–181, which merely enlarged the right to execution as to certain "rights and credits" therein enumerated, *Cowan v. Storms*, 121 *N. J. L.* 337 (*Sup. Ct.* 1938), and which need not be defined or delineated here because the levy of the appellant is good for the reasons heretofore stated.

It is difficult to understand what all the maneuvering is about respecting this apparently solvent estate and it is equally difficult to understand why this estate was not immediately wound up and why the defendant-administrator has not voluntarily paid the claim of the appellant or completed the necessary steps to make such payment. Whatever the law or difficulties one cannot help but wonder at the motive of the administrator in putting the estate to the expense of all the proceedings taken in this case, including two appeals to the highest court of the State, when there is no apparent advantage to be gained except delay as the claim is a valid one and funds were or could have been made readily available to pay it.

Counsel for the respondent apparently are indifferent because they impertinently remark and imply that the administrator is under a bond to protect judgment creditors. This is no answer to what has happened in this case. The delay in this case has been inexcusable in view of the apparent solvent condition of this estate and the fact that the personal assets are approximately sufficient to pay all outstanding debts except counsel fees.

We reach the legal conclusions herein expressed with reluctance but judicial legislation is not our prerogative. We are bound by the statutes cited.

The order below is reversed and the mandate of this court is that such real estate as may be necessary to pay all debts be sold under the order of sale and the final account be filed within a reasonable length of time and distribution made.

408

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.